The CITY OF EL PASO, Appellant,

v.

Joseph AYOUB and Esperans
Ayoub, Appellees.

No. 08–89–00205–CV.

Court of Appeals of Texas,
El Paso.

March 28, 1990.

Rehearing Overruled April 25, 1990.

David C. Caylor, City Atty., Eduardo Miranda and Laura P. Gordon, Asst. City Attys., El Paso, for appellant.

Frank Owen, III, El Paso, for appellees.

Before FULLER, WOODARD and KOEHLER, JJ.

OPINION

KOEHLER, Justice.

Joseph and Esperans Ayoub sued the City of El Paso for damages resulting from the death of their son, Stephen Joseph Ayoub, following a one vehicle accident in which the vehicle he was driving left the street, drove onto the median separating the north and southbound lanes of the street and entered into a culvert crossing under the street. From an unfavorable verdict and judgment for substantial damages and prejudgment interest, the City of El Paso brings this appeal. We reverse and render.

The accident in question occurred on June 27, 1976. The deceased apparently lost control of the Jeep he was driving in the northbound lane of Alabama Street, a divided four lane major arterial street in Northeast El Paso, striking a metal guardrail as it was moving down or onto the median, eventually entering a deep culvert which was open between the opposing lanes of the street. The street, the culvert, and the guardrails (which we will refer to collectively as the "overpass") had been designed in 1960, completed in April 1961 and were in substantially the same condition at the time of the accident as they were when completed. Appellees in their third amended petition alleged Tort Claims Act and common law causes of action for negligent design of the overpass and negligent failure to warn of a dangerous condition. At the conclusion of the trial, the jury found that the culvert was negligently designed by the City and that as a result, the roadway at the location of the accident was a dangerous condition. The jury also found that the City negligently failed to warn of this dangerous condition.

In its first point of error, the City contends that the trial court erred as a matter of law in entering judgment for Appellees for the reason that the City has no liability either under the Tort Claims Act or outside the Act since the design of the overpass was a governmental function, and both the

design and the placement of warning signs were discretionary. Appellees, conceding in their brief that the Tort Claims Act is not involved, argue that the judgment is based on common law liability because the construction and maintenance of the overpass in question were proprietary functions of the City.

Appellees do not claim, and there is no evidence to the effect, that at the time of the accident, the overpass was in a bad state of repair. The evidence in the case is that the overpass at that time was in essentially the same condition as when it was designed and constructed. During the trial and post-trial proceedings, Appellees contended variously that the overpass was improperly designed in the first place or that it should have been upgraded at some time prior to the accident or that it was improperly maintained. Contrary to Appellees' assertion, there is no evidence that there were any mandatory standards on the construction or design of streets, guardrails or overpasses at the time the overpass in question was designed or built. To dispose of the "maintenance" as opposed to the "design" issue, "maintenance" of an overpass has been defined as "that [activity] which is required to preserve the overpass as it was originally designed and constructed." *Stanford v. State Department of Highways and Public Transportation*, 635 S.W.2d 581, 582 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Changing the design is not maintenance. *Burnett v. Texas Highway Department*, 694 S.W.2d 210, 212 (Tex.App.—Eastland 1985, writ ref'd n.r.e.). In the instant case, if there was a problem with the overpass, it was clearly not a maintenance problem.

■ Is the design of an arterial street, and particularly an overpass on that street, the exercise of a governmental function or a proprietary one? Although sometimes difficult to distinguish, making it necessary to look at the facts of each case, *City of Waco v. Thompson*, 127 S.W.2d 223, 225 (Tex.Civ.App.—Waco 1939, writ dism'd judgmt cor.), it has long been held that where the powers are exercised by the municipality for purposes essentially public

or for the general public welfare, as opposed to powers exercised for the private advantage and benefit of the locality and its inhabitants, then the exercise of the power is governmental and the municipality may not be sued for any act or omission occurring while in the performance of such power, unless the state by statute declares to the contrary. *City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (1884). Regulation of traffic on the city streets is generally considered to be a governmental function. *City of Austin v. Daniels*, 160 Tex. 628, 335 S.W.2d 753, 754 (1960). As a quasi-judicial exercise of the police power of the state, plat approval is a discretionary function that can be performed only by a governmental unit and is therefore the exercise of a governmental function. *City of Round Rock v. Smith*, 687 S.W.2d 300 (Tex.1985). By analogy, the · design of streets, as opposed to their ongoing construction or their maintenance after construction has been completed, is in part an exercise of the police power of the state and is essentially exercised by the municipality for a general public purpose, not just for the benefit of its own residents or for some private advantage. This being true for city streets generally, it is perhaps more apparent in the case of a main thoroughfare, such as Alabama Street in El Paso. Based on these principles, we hold that the design of city streets is an exercise of a governmental function. *City of Waco v. Darnell*, 35 S.W.2d 134, 135 (Tex. Comm'n.App.1931, holding approved); *Palmer v. City of Benbrook*, 607 S.W.2d 295, 298 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

■ Having arrived at that conclusion, it is unnecessary for us to consider whether the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann., sec. 101.001 et seq. (Vernon 1986), has any application since its nonapplicability has been conceded by Appellees. However, the design, placement and upgrading of guardrails and barricades is the exercise of a discretionary power, which under Section 101.056 of the Act is immune from liability. *Burnett*, 694 S.W.2d at 212. See *Stanford*, 635 S.W.2d

at 582. Point of Error No. One is sustained.

Having sustained the first point, it is not necessary for us to consider the remaining points of error. The judgment of the trial court is reversed and rendered that Appellees take nothing. Costs are adjudged against Appellees.