Donald McKINNEY, Individually, Mary McKinney, Individually, and Donald McKinney and Mary McKinney as Next Friends for Wendy McKinney and Tammy McKinney, Minors, Appellants,

v.

CITY OF GAINESVILLE, Texas, Appellee.

No. 2–90–097–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 23, 1991.

Jeff C. Wilson, Stagner & Stagner, Sherman, for appellants.

Nancy O. Williams, Henderson, Bryant & Wolfe, Sherman, for appellee.

WEAVER, C.J., and HILL and MEYERS, JJ.

## OPINION

WEAVER, Chief Justice.

Appellants, Donald McKinney, individually, Mary McKinney, individually, and Donald McKinney and Mary McKinney as next friends for Wendy McKinney and Tammy McKinney, minors, appeal from a summary judgment in favor of the City of Gainesville, Texas, ("City"). We affirm.

Appellants sued the City, together with five other individual defendants, seeking damages for personal injuries. The McKinney family attended a Christmas parade in the City of Gainesville on November 21, 1987. One of the entrants in the parade was a horse drawn buggy driven by one of the defendants, Parker Yarbrough. Mr. Yarbrough owned the buggy, while two other defendants, Steve and Jane Kohler, owned the horse, and the entry of the horse and buggy in the parade was sponsored by Wallace and Barbara Inglish who were also named as defendants.

During the parade, the bits on the horse's bridle became loose. The driver was unable to control the horse, and the horse and buggy veered over into the crowd causing the injuries and the resulting damages sought to be recovered by appellants in this action. The appellants alleged various acts of negligence on behalf of the defendants and claimed that the City violated duties owed to the appellants in failing to provide adequate crowd control, in failing to inspect the parade entrants' vehicles, in failing to provide adequate assistance to prevent a mishap, and in failing to provide necessary protection to citizens attending the parade.

On January 23, 1990, the City filed a motion for summary judgment, together with excerpts from six depositions attached thereto as constituting its summary judgment evidence. The City claimed by such motion for summary judgment, and claims on this appeal, that appellants' claims against the City are barred by governmental immunity afforded to the City. Appellants filed a response to the motion for summary judgment and also attached thereto excerpts from two depositions. On March 20, 1990, the trial court signed a summary judgment ordering that appellants take nothing against the City.

Appellants bring three points of error alleging that the trial court erred in granting the motion for summary judgment. By point one they claim that the governmental immunity asserted by the City is specifically waived by the provisions of section 101.-

0215 of the Texas Civil Practice and Remedies Code.

Under point two appellants assert that the trial court erred by not ruling that the failure of the City to provide barricades along the parade route was "a condition or use of tangible property" within the meaning of the waiver provision of section 101.-021. Under point three appellants urge that the trial court erred in denying them their day in court. It is undisputed that the City placed some barricades at the fairgrounds, but did not place barricades along the parade route. Appellants appear to argue under this point that if the failure of the City to place barricades along the parade route was discretionary with the City, then the City is not liable; however, if such failure was not discretionary then the City is liable, and its claim of governmental immunity was waived. They then claim that the question of whether the City's failure to place barricades along the parade route was discretionary is a fact matter to be determined by the trier of facts, which precludes summary judgment. The summary judgment evidence consists of excerpts from depositions attached to the motion for summary judgment and to the response. Charles Sullivan, the owner of a shoe store in Gainesville, testified that he was chairman of the parade and ran the 1987 Christmas parade and that he was asked to do so by the downtown merchants association. When questioned as to who put on the Christmas parade, Sullivan testified that it was a combination of businesses and the City and the people, and that money is asked to be donated by all the merchants of the area and that money is what funds the parade. He assumed that the rules of the parade were passed to him from the chamber, and to his knowledge the City had nothing to do with the rules of the parade. He testified that the City had nothing to do in determining who would be an entrant in the parade, and Lyle H. Dresher, the City Manager, testified that he did not know who decides what entrants are going to be allowed in the parade. Parker Yarbrough, the driver of the horse and buggy, testified that as far as he knew the parade was sponsored by the downtown merchants.

The City Manager also testified that the City escorts the parade and provides manpower to assist by at least having a person at each of the cross-street intersections; that they block off California Street at the entrance of the parade where it begins; that they see that the parade is turned off of California at the termination point of the parade; and that the City does have some involvement as far as the safety of the route when the parade is going on from the traffic standpoint. He testified that the City provides "some barricades for the area where the parade is being staged for the people participating in the parade where the floats are assembled, horses or cars or whatever they might be, to keep ... vehicular traffic or whatever from driving through there, ..." He testified that the City does barricade off a few of the streets and reserves that area for the staging of the parade, and that is basically the involvement of the public works department as far as barricades are concerned. He also testified that the police department escorts the parade and has someone at the back of the parade just as it finishes up; that the City provides traffic control at the entrance of the parade to stop the traffic from entering the parade route or entering or going down eastbound on California; that the City does not detour the traffic, just simply stops traffic; that the City provides an officer or a volunteer at each one of the cross-street intersections along the parade route just to try to insure that no vehicular traffic crosses during the parade.

Charles Sullivan also testified that he contacted Claud Tamplin with the Department of Public Works to have barricades brought down to the parade ground, that they (apparently meaning the City) dropped the barricades off and that for the 1987 parade ten barriers were dropped off and were just used for the fairgrounds. There is no testimony that the City provided, or attempted, or intended to provide, barriers along the parade route to hold back the spectators, and that the City did not do so appears to be uncontested.

Under appellants' first point of error, they argue that the trial court erred in granting the City's motion for summary judgment because the 1987 amendment to the Texas Torts Claims Act (TTCA) (section 101.0215 of the Texas Civil Practice and Remedies Code) waives governmental immunity for a municipality if one of the governmental functions listed in the new section is involved. Appellants cite us no cases interpreting the scope of this amendment.

Section 101.0215 states:

A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:

(1) police and fire protection and control;

....

(20) warning signals;

(21) regulation of traffic;

....

TEX.CIV.PRAC. & REM.CODE ANN. § 101.-0215(a) (Vernon Supp.1991). Appellants argue that since the City of Gainesville, a municipality, provided police protection, traffic control, and delivered barricades it has waived any claim of governmental immunity and is liable for damages arising from those governmental functions contained in section 101.0215.

■ Nevertheless, even assuming that the City's actions fall within section 101.-0215, we do not view this as waiving the City's governmental immunity. This section clearly provides that "[a] municipality is liable *under this chapter* for damages arising from its governmental functions, ..." *Id.* (emphasis added). "Under this chapter" refers to the TTCA. When analyzing a cause of action brought under the TTCA against a municipality, the initial determination to be made is whether the municipality's action or omission involved its proprietary function or governmental function. This determination is crucial be-

cause section 101.0215(b) states that the TTCA "does not apply to the liability of a municipality for damages arising from its proprietary functions, ..." Whereas if the action engaged in by a municipality is considered to be a governmental function, the TTCA does apply, and further analysis under the Act is required to determine a municipality's potential liability. The Texas Legislature took the initiative to statutorily list those municipal activities that fall within a municipality's governmental function in section 101.0215(a), and those activities that fall within a municipality's proprietary function in section 101.0215(b). Neither list is inclusive.

■ This interpretation, that section 101.0215 did not waive governmental immunity merely because a governmental action fell within the list of section 101.0215, is furthered by representative Toomey's statement relating to the enactment of the section: "Section 3.02 concerns municipalities. Liabilities from activities in the list of governmental functions in the new proposed section (Sec. 101.0215) arise only out of those areas listed in Sections 101.021 and 101.022 of the Code (Civil Practice and Remedies Code)." H.J. of Tex. 70th Leg. 1st Called Sess. 10 (1987).

"Accordingly, the provision in section 101.0215(a) regarding the municipality being 'liable *under this chapter*' requires, and was intended to require, that liability arising out of a governmental function (including those so classified in the section 101.0215(a) list) be established under one of the three areas in which the TTCA has waived sovereign immunity." Montford, Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System*, 25 Hous. L.Rev. 117, 121 (1988) (emphasis original) (footnotes omitted). Hence, merely because a governmental action falls within section 101.0215, this does not mean that governmental immunity is waived. Appellant's first point of error is overruled.

■ Under their second point of error, appellants argue that the trial court erred in granting the City's motion for summary

judgment because, under section 101.021(2) of the TTCA, the City waived its governmental immunity. Under this section, a governmental unit waives its immunity if:

> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas Law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986). Appellants assert that the trial court erred in not finding that their injuries arose and were caused by a condition or use of tangible property belonging to the City since the City failed to provide barricades along the parade route to keep citizens out of the streets. However, we view appellants' attempt to fall within section 101.021(2) as premature. Initially, before we reach the issue of whether the appellants' injuries were caused by a condition or use of tangible property, we must first determine whether the City's failure to provide barricades along the parade route involved the City's discretionary power.

This initial distinction must be made because the TTCA does not apply to a claim based on:

> (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
>
> (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.056 (Vernon 1986). We know of no clear-cut test for determining when a claim is precluded by this statute. *See Tarrant Cty. Water Control v. Crossland,* 781 S.W.2d 427, 433 (Tex.App.—Fort Worth 1989, writ denied); *Comment, The "Policy Decision" Exemption of the Texas Tort Claims Act: State v. Terrell,* 32 BAYLOR L.REV. 403, 410 (1980). However, cases have stated that decisions made at a policy level instead of an operational level are exempt as policy decisions. *Tarrant Cty. Water Control,*

781 S.W.2d at 433; *Trinity River Authority v. Williams,* 659 S.W.2d 714, 723 (Tex. App.—Beaumont 1983), *aff'd in part, rev'd in part,* 689 S.W.2d 883 (Tex.1985). The purpose behind this distinction and section 101.056 is "to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions. The interests to be served by these provisions are several—*e.g.,* effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government." *State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979).

Appellants have not shown us that the City was under a mandatory duty to provide barricades along the parade route. Also, it appears that the common law holds that a city has no duty to provide barricades along a parade route. *Morris v. City of Houston,* 466 S.W.2d 851, 856 (Tex.Civ. App.—Houston [14th Dist.] 1971, no writ). In *City of El Paso v. Ayoub,* 787 S.W.2d 553 (Tex.App.—El Paso 1990, writ denied), the El Paso Court of Appeals held that the design, placement, and upgrading of guardrails and barricades is an exercise of discretionary power. *Id.* at 554. We view the decision whether to place barricades along the parade route as a policy decision.

Appellants contend that since the City made a conscious decision to provide barricades at the fairgrounds, but not along the parade route, that any claim of government immunity under this statute is waived. We disagree. The summary judgment evidence shows that the City was requested to provide barricades for the fairgrounds, but not along the parade route. We do not view the City's decision to comply with the request for having barricades at the fairgrounds as waiving the City's governmental immunity in this case. If the City had decided to provide the barricades along the parade route, the City may have been liable for those decisions incidental to the formation of that policy. However, we consider the City's decision to supply barricades at the fairgrounds as separate from any determination of the City regarding barricades along the parade route. We hold

that such a decision falls within the City's discretionary power, and it is therefore immune from liability. Appellants' second point of error is overruled.

■ Appellants complain, under their third point of error, that whether the City engaged in an exercise of its discretionary power (i.e. its failure to provide a traffic or road sign or other devices, such as barricades) is a factual question which should have been submitted to the trier of fact. Appellants cites us to *Villarreal v. City of San Antonio*, 657 S.W.2d 175 (Tex.App.— San Antonio 1983, no writ), which held that the question of whether a city has discretion to initially place traffic barricades is a fact question. While that court held that the jury should determine whether an activity engaged in by a city involved its discretionary power, the majority of cases, while not explicitly so stating, have handled this issue as a legal question and one for the court to make. *See State v. Terrell*, 588 S.W.2d at 787–89; *Tarrant Cty. Water Control*, 781 S.W.2d at 433; *University of Texas at Arlington v. Akers*, 607 S.W.2d 283, 285–86 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Norton v. Brazos County*, 640 S.W.2d 690, 693 (Tex.App.— Houston [14th Dist.] 1982, no writ). We hold that the question of whether a city's actions fall within its discretionary power is for the court to determine. The appellants' third point of error is overruled. The judgment of the trial court is affirmed.