Kathy **MOGAYZEL**, Individually and on Behalf of the Estate of Zachary Mogayzel, Deceased, Karen Roop, Individually and on Behalf of the Estate of Nancy Elizabeth Mogayzel, Deceased, and Christi Callender, Individually and as Next Friend of Matthew Callender and Adam Callender, Appellants,

v.

**TEXAS DEPARTMENT OF TRANSPORTATION and The State of Texas, Appellees.**

No. 2–00–409–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 13, 2001.

Rehearing Overruled Feb. 28, 2002.

---

Pierson & Behr, Bart Behr, Arlington, The Law Offices of Eloy Sepulveda, Eric Ivan Bruntmyer, Fort Worth, for Appellant.

John Cornyn, Atty. Gen. of Texas, Howard G. Baldwin, Jr., First Asst. Atty. Gen., Jeffrey S. Boyd, Deputy Atty. Gen. for Litigation, Julie Parsley, Solicitor Gen., Grady Click, Asst. Atty. Gen. and Chief of the Transp. Div., Jack F. Gilbert, Asst. Atty. Gen., for Appellee.

Panel B: DAY, HOLMAN, and GARDNER, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellants Kathy Mogayzel, Karen Roop, and Christi Callender appeal from the trial court's decision to grant a motion to dismiss their case for lack of jurisdiction. In their sole point, Appellants argue that the trial court erred in granting the motion to dismiss on grounds that Appellants' claims are barred by the sovereign immunity of the State and the Texas Department of Transportation ("TxDOT"). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 1999, Andrew Mogayzel ("Andy"), who was Kathy Mogayzel's husband, was driving westbound on interstate highway 20 ("I–20") in the city of Arlington with his mother-in-law, Nancy Mogayzel ("Nancy"), and his son, Zach. Andy somehow lost control of the car, perhaps due to a tire blowout, and hit the guardrail on the outer lane of westbound I–20. When he attempted to steady the vehicle, he over-corrected, causing him to spin and cross over the grassy median separating the westbound lanes from the eastbound lanes of I–20 where his car struck other vehicles in the eastbound lanes. Nancy and Andy were instantly killed when one of the cars in an eastbound lane impacted their car head on. Zach also died after being thrown from the vehicle and run over by an oncoming car. Members of Appellant Callender's family, who were traveling in one of the eastbound lanes, were also injured in the accident.

The Callenders first brought suit against the Mogayzels, Ana Perez Morris, who was another motorist involved in the accident, and TxDOT. Subsequently, however, Appellants Mogayzel and Roop moved to consolidate their claims with Appellant Callender's claims against TxDOT. Pursuant to an agreed order, Mogayzel's and Roop's claims against TxDOT were consolidated with Appellant Callender's claims on July 7, 2000. After the trial court granted Appellees' motion to dismiss, Appellant Cal-

lender's separate claims against Appellant Mogayzel were severed pursuant to an agreed joint motion so that they could appeal the trial court's judgment dismissing their cases against TxDOT for lack of jurisdiction.

### LIABILITY UNDER THE TORT CLAIMS ACT

As governmental entities, Appellees are immune from both suit and liability unless the Texas Tort Claims Act (the "Act") waives that immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021, 101.025 (Vernon 1997). In their motion to dismiss for lack of jurisdiction, Appellees asserted that sovereign immunity was not waived because its acts or omissions were "discretionary." *See id.* § 101.056 (providing that sovereign immunity is not waived when the act or omission complained of is a discretionary function of the State). The trial court, apparently agreeing that the discretionary functions exception applied, granted the motion to dismiss Appellants' case on September 21, 2000.

Appellants, however, rely on section 101.060 of the Act, which provides an exception to governmental sovereign immunity in certain situations, even where governmental acts or omissions are "discretionary":

(a) This chapter does not apply to a claim arising from:

(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;

(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice . . .

. . . .

(b) The signs, signals, and warning devices referred to in this section are those used in connection with hazards normally connected with the use of the roadway.

(c) This section does not apply to the duty to warn of special defects such as excavations or roadway obstructions.

*Id.* § 101.060. Here, Appellants argue, section 101.060(a)(2) waives sovereign immunity for Appellees, which, if true, means that the trial court had subject matter jurisdiction over the case and erred in granting Appellees' motion to dismiss.

### STANDARD OF REVIEW

■ Subject matter jurisdiction is determined by whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999). Whether a trial court has subject matter jurisdiction, however, is a question of law subject to de novo review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

■ Regarding waiver of governmental immunity, it is an accepted and fundamental rule in Texas jurisprudence that the State of Texas, its agencies, and its officers may not be sued without the consent of the Texas legislature. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997); *Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n*, 600 S.W.2d 264, 265–66 (Tex.1980). This immunity even exists where the State's liability is not disputed.

*Mo. Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970).

On appeal from a judgment of dismissal, we are obliged to take as true the allegations in Appellants' petition and construe them favorably to Appellants' position. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. "It is a fundamental rule that in determining the jurisdiction of the trial court, the allegations of the petition made in good faith are determinative of the cause of action." *Brannon v. Pac. Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949); *Leonard v. Cornyn*, 47 S.W.3d 524, 529 (Tex. App.—Austin 1999, pet. denied), *cert. denied*, 531 U.S. 1081, 121 S.Ct. 783, 148 L.Ed.2d 680 (2001). However, a plaintiff's "[m]ere reference to the Tort Claims Act does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court." *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001). To invoke the trial court's jurisdiction under the Act, it is necessary to show in what manner the Act waives the State's immunity from suit. *See Holder v. Mellon Mortgage Co.*, 954 S.W.2d 786, 805–08 (Tex. App.—Houston [14th Dist.] 1997), *rev'd on other grounds*, 5 S.W.3d 654 (Tex.1999).

### APPLICATION

The Act waives the State's sovereign immunity in three areas: (1) use of publicly owned vehicles; (2) premises defect; and (3) conditions or use of tangible property. *Lamar Univ. v. Doe*, 971 S.W.2d 191, 195 (Tex.App.—Beaumont 1998, no pet.). If a claim does not fall within one of these areas, the governmental entity remains immune from both suit and liability. *Wilkins v. State*, 716 S.W.2d 96, 98 (Tex.App.—Waco 1986, writ ref'd n.r.e.). Thus, the issue before us is whether Appellants have made out a claim for premises defect and whether Appellees'

immunity is waived given Appellants' factual allegations.

### Premises Defect

Whether a condition is a special defect or a premises defect is a question of law. *State Dep't of Hwys. & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex.1992) (op. on reh'g). A state highway, such as I–20, has been viewed as a premises. *Sutton v. State Hwy. Dep't*, 549 S.W.2d 59, 61 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). Appellants' claim that the lack of barriers or guardrails on the Arlington portion of I–20 presents either a special defect or a premises defect under section 101.022 of the Act, which provides:

(a) If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by section 101.060.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.022.

### Regular Premises Defect

The supreme court has provided us with the proper framework by which to plead a regular premises defect case:

1. a condition of the premises created an unreasonable risk of harm to the licensee;

2. the owner actually knew of the condition;

3. the licensee did not actually know of the condition;

4. the owner failed to exercise ordinary care to protect the licensee from danger; [and]

5. the owner's failure was a proximate cause of the injury to the licensee.

*Payne*, 838 S.W.2d at 237. In a regular premises defect case, owners owe a duty to licensees to warn of or make reasonably safe a dangerous condition on the premises, and not to injure licensees by willful, wanton, or grossly negligent conduct. *Id.*; *Miranda v. State*, 591 S.W.2d 568, 570 (Tex.Civ.App.1979, no writ).

■■■ Here, Appellants have failed to address how the design of the highway is not a discretionary act for which Appellees have sovereign immunity. Under the Act, if the state's action giving rise to personal injury or death is discretionary, the Act does not waive the state's immunity. *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex.1999); *see Cortez v. Weatherford ISD*, 925 S.W.2d 144, 149 (Tex.App.—Fort Worth 1996, no writ). Section 101.056 of the Act provides that governmental immunity is not waived for claims arising from:

(1) the failure of a governmental unit to perform an act that the unit is not required to by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.056.

In Appellants' brief, they indicate that immunity could be waived under the doctrine of negligent implementation of a discretionary act. In *Zambory v. City of Dallas*, upon which Appellants rely, the plaintiff alleged that there was a city council meeting where council members passed a resolution or a motion to install a traffic light at a particularly dangerous intersec-tion. 838 S.W.2d 580, 581 (Tex.App.—Dallas 1992, writ denied). Because the city had notice of the dangerous condition of the intersection and had arguably decided to correct the dangerous condition by installing a traffic light, but failed to do so prior to plaintiff's accident, the court held that genuine issues of material fact existed as to whether section 101.060 of the Act waived sovereign immunity. *Id.*

■■■ The discretionary function exception to the waiver of sovereign immunity, on which Appellees rely, is designed to avoid judicial review of governmental policy decisions. *See State v. Terrell*, 588 S.W.2d 784, 787 (Tex.1979); *McKinney v. City of Gainesville*, 814 S.W.2d 862, 866 (Tex.App.—Fort Worth 1991, no writ). Thus, a governmental entity is immune from liability if an injury results from the formulation of policy. However, a governmental unit is not immune if an injury is caused by the negligent implementation of that policy. *See Terrell*, 588 S.W.2d at 787–88; *Christilles v. Southwest Tex. State Univ.*, 639 S.W.2d 38, 42 (Tex.App.—Austin 1982, writ ref'd n.r.e.). This distinction is often stated in terms of actions taken at the planning or policy-making level, which are immune, and actions taken at the subordinate or operational level, which are not immune. *See McKinney*, 814 S.W.2d at 866. Design decisions are discretionary and are therefore immune from liability. *City of Watauga v. Taylor*, 752 S.W.2d 199, 202 (Tex.App.—Fort Worth 1988, no writ); *Stanford v. State Dep't of Hwys. & Pub. Transp.*, 635 S.W.2d 581, 582 (Tex. App.—Dallas 1982, writ ref'd n.r.e.).

■■■ Here, although Appellants pled that Appellees had notice of I–20's dangerous condition and failed to correct it within a reasonable time, they have not alleged that the dangerous condition came about through a negligently implemented policy

or plan. Rather, Appellants complain of the condition of I–20 as it was *originally designed. See State v. Miguel*, 2 S.W.3d 249, 250–51 (Tex.1999). I–20's design is a discretionary act for which Appellees enjoy immunity. "Design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions." *Rodriguez*, 985 S.W.2d at 85 (citing *Villarreal v. State*, 810 S.W.2d 419, 422 (Tex.App.—Dallas 1991, writ denied)). Therefore, Appellants have failed to properly plead a regular premises defect cause of action.

### Special Premises Defect

 Appellants have also alleged a special defect, which, if applicable, would require Appellees to warn motorists on I–20 that there is no concrete barrier or guardrail to prevent them from crossing over the grass median into oncoming traffic even if Appellees only had constructive knowledge of the dangerous condition. *See Morse v. State*, 905 S.W.2d 470, 474 (Tex. App.—Beaumont 1995, pet. denied). Courts have defined "special defect" as something that presents an "unexpected and unusual danger to ordinary users of the highways," *Payne*, 838 S.W.2d at 238, which "unexpectedly and physically impair[s] a car's ability to travel on the road." *Rodriguez*, 985 S.W.2d at 85. Furthermore, special defects are statutorily defined as "defects such as excavations or obstructions on highways, roads, or streets". Tex. Civ. Prac. & Rem.Code Ann. § 101.022(b). A condition can be a "special defect" without actually being on the roadway if it is close enough to present a threat to the "normal users of a road." *See Payne*, 838 S.W.2d at 238, n. 3. Where a special defect exists, it is the duty of the governmental unit that owns or controls a roadway to warn of the defect even though that governmental unit did not create the defect. *County of Harris v. Eaton*, 573 S.W.2d 177, 179–80 (Tex.1978). Thus, the primary issue here is whether the grass median or the lack of a concrete barrier constitutes a condition, "such as excavations or obstructions on highways," that presents an unexpected or unusual danger to ordinary users of the roadway.

 There is nothing in Appellants' pleadings alleging what is extraordinary, unexpected, or unusual about a highway with a thirty-two foot wide grass median. As Appellees point out, "There are literally thousands or even hundreds of thousands of miles of highways in Texas that exist with no center median barriers." Appellants neither allege how the lack of barriers, guardrails, warning signs, or barrels constitutes a special defect, nor how the grass median itself is a special defect. Therefore, Appellants have failed to properly plead a special defect cause of action.

### Conclusion

Appellants have not invoked the trial court's jurisdiction by alleging how Appellees' immunity should be waived due to a regular or special premises defect. We affirm the trial court's order granting Appellees' motion to dismiss the underlying case for lack of subject matter jurisdiction due to sovereign immunity.