Affirmed and Opinion filed May 12, 2005









Affirmed and Opinion filed May 12, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00937-CV

____________

 

ETHIO EXPRESS
SHUTTLE SERVICE, INC. D/B/A TEXANS SUPER SHUTTLE, Appellant

 

V.

 

CITY OF HOUSTON, Appellee

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 03-65642A

 



 

O P I N I O N

Appellant, Ethio Express Shuttle Service,
Inc., appeals the trial court’s judgment dismissing its case for want of
jurisdiction.  On appeal, Ethio claims
the trial court should not have granted the City’s plea to the jurisdiction,
arguing alternatively that either (1) the City was not engaged in a proprietary
function and therefore did not enjoy sovereign immunity,  or (2) the Texas Tort Claims Act waived
immunity.  We affirm because the City was
engaged in a governmental function when it regulated transportation to and from
airports and because the causes of action Ethio alleged do not fall within the
Act’s limited waiver of immunity.








Factual and Procedural Background

Ethio is a private bus shuttle service
that operates in Houston, Texas.  When
Ethio initially asked the City for a ground transportation permit to provide
shuttle service from two airports the City owned, the City denied the request,
stating that its exclusive contract with Yellow Cab[1]
prohibited it from allowing Ethio to provide a scheduled shuttle service for
airport traffic.  As a result, Ethio
designed its proposed routes to operate in other areas.  Later, however, the City informed Ethio that
its Yellow Cab contract was not exclusive and that it should have granted Ethio
the permit.  By this point, Ethio already
had expended a considerable amount of money redesigning its routes based on the
City’s earlier representation that Ethio would not be permitted to provide a
private shuttle service from either of the City’s airports.








Ethio then filed suit against the City,
alleging negligent misrepresentation, fraud, conspiracy to commit fraud,
business disparagement and slander, tortious interference with contract,
conspiracy to tortiously interfere with contract, and conspiracy to engage in
an unlawful restraint of trade.[2]  The City specially excepted to Ethio’s
failure to plead a valid waiver of sovereign immunity.  Ethio responded by filing its First Amended
Petition in which it asserted the court had jurisdiction because the City was
engaged in a proprietary function and, thus, enjoyed no sovereign immunity.[3]  The City then filed a plea to the trial
court’s jurisdiction, this time asserting it was not engaged in a proprietary
activity and had not waived sovereign immunity. 
In response, Ethio urged that the trial court had jurisdiction, arguing
alternatively that either the City was engaged in a proprietary activity or the
Texas Tort Claims Act had waived the City’s sovereign immunity.  The trial court granted the City’s plea and
dismissed Ethio’s claims against the City for want of jurisdiction.  

On appeal, Ethio argues that the City’s
regulation of the private shuttle service from its airports is a proprietary
activity for which the City does not enjoy governmental immunity.  In the alternative, Ethio urges this court to
find the City’s immunity has been waived by the Texas Tort Claims Act.  We first address Ethio’s claim that the City
was engaged in a proprietary activity.[4]

Standard of Review

The City’s plea to the jurisdiction
challenged the trial court’s authority to determine the subject matter of
Ethio’s suit.  See Metropolitan
Transit Auth. v. Burks, 79 S.W.3d 254, 256 (Tex. App.—Houston [14th Dist.]
2002, no pet.) (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
554 (Tex. 2000)).  Deciding whether the
trial court had subject matter jurisdiction is a question of law, reviewed de
novo.  See id. (citing Mayhew
v. Town of Sunnydale, 964 S.W.2d 922, 928 (Tex. 1998)).  The burden is on Ethio, as the plaintiff in a
suit against a sovereign entity, to establish the trial court’s
jurisdiction.  See Reyes v. City of
Houston, 4 S.W.3d 459, 461 (Tex. App.—Houston [1st Dist.] 1999, pet.
denied).  We examine a plaintiff’s good
faith factual allegations to determine whether the trial court had
jurisdiction. See Metropolitan Transit Auth., 79 S.W.3d at 256 (citing Bland,
34 S.W.3d at 554).  We must indulge every
reasonable inference and resolve any doubts in Ethio’s favor.  See Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Sci. Spectrum, inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997)).








Analysis

1.       The
regulation of a private shuttle service from the City’s airports is a
governmental function for which the City enjoys sovereign immunity.

The
importance of the governmental-proprietary distinction.

Ethio alleges that
the City is engaging in a proprietary function when it regulates traffic to its
airports and therefore it is not immune from liability.  Because the principles underlying Ethio’s
claim are true—that a city enjoys no immunity when it engages in a proprietary
function—that issue is the first question we must answer.  Tex.
Civ. Prac. & Rem. Code § 101.0215(b); Gates, 704 S.W.2d at
739; Cranford v. City of Pasadena, 917 S.W.2d 484, 487 (Tex.
App.—Houston [14th Dist.] 1996, no writ) (“[I]f the municipality engaged in a
proprietary act, a plaintiff could sue under common law as before.”) (citing Turvey
v. City of Houston, 602 S.W.2d 517, 519 (Tex. 1980)).  Only if we decide that the City’s regulation
was a governmental function would we decide whether Ethio pleaded a valid
waiver of sovereign immunity. City of Houston v. Southwest Concrete Constr.,
Inc., 835 S.W.2d 728, 731 (Tex. App.—Houston [14th Dist.] 1992, writ
denied) (“In this [governmental functions] capacity, a municipality is afforded
the state’s sovereign immunity except to the extent the state has waived its
immunity under the Texas Tort Claims Act.”) (citing Tex. Civ. Prac. & Rem. Code § 101.001 et seq.).  For the following reasons, we hold the Texas
Tort Claims Act classifies this activity as a governmental function.[5]  

Determining if a function is
governmental or proprietary.








Before the 1987 amendments to the Texas
Tort Claims Act, the Act did not define which activities were proprietary and
which were governmental.  During this
time, Texas courts, guided by the language of the Act, decided whether a
particular activity was proprietary or governmental.  Southwest Concrete, 835 S.W.2d at 731
n.2 (“Prior to the 1987 amendments . . . [t]he definition of what actions
constituted proprietary or governmental functions was left to the
judiciary.”).  As part of tort reform,
however, the Legislature exerted more control over the designation of an
activity as proprietary or governmental by amending the Texas Tort Claims Act
and adding definitions of governmental and proprietary functions.  See id.; Tex. Civ. Prac. & Rem. Code § 101.0215(a), (b).   Under these amendments, a governmental function
is one that is “enjoined on a municipality by law and given to it by the state
as part of the state’s sovereignty, to be exercised by the sovereignty in the
interest of the general public,” id. at § 101.0215(a); a proprietary
function is one that “a municipality may, in its discretion, perform in the
interest of the inhabitants of the municipality . . . .”  Id. at § 101.0215(b).  








As part of the amendments, the
Legislature, in section 101.0215(a), included a nonexclusive list of activities
categorized as governmental functions. Id. at § 101.0215(a)(1)–(36).[6]  If a function is included in this
nonexclusive list of governmental functions, it has been deemed governmental in
nature by the Legislature and we have no discretion or authority to hold
otherwise.  See Tex. Civ. Prac. & Rem. Code §
101.0215(c) (“The proprietary functions of a municipality do not include those
governmental activities listed under Subsection (a).”); Texas River Barges
v. City of San Antonio, 21 S.W.3d 347, 357 (Tex. App.—San Antonio 2000,
pet. denied) (“Because the City’s actions were encompassed within the
governmental functions listed in the Act, we have no discretion to declare the
actions proprietary . . . .”) (citing Herschbach v. City of Corpus Christi,
883 S.W.2d 720, 730 (Tex. App.—Corpus Christi 1994, writ denied); Mitchell
v. City of Dallas, 855 S.W.2d 741, 744 (Tex. App.—Dallas 1993), aff’d,
870 S.W.2d 21 (Tex. 1994)).

The regulation of private shuttle
services from the City’s airports.

The list in section 101.0215(a) is rather
specific in its description of functions; for example, some of the categories
are ‘maintenance of traffic signals, signs and hazards,’ ‘parking facilities,’
and ‘fireworks displays.’  Continuing in
this vein of specificity, three of the activities included in the list directly
relate to the activities involved in this case: airports, regulation of
traffic, and transportation systems.  Id.
at § 101.0215(a)(10), (21), (22).  These
three categories cover precisely the three aspects of this case because Ethio
is a transportation system transporting travelers to the City’s airports and
the City regulates its business.  We
would be remiss to hold that the City’s activities are proprietary in a case in
which they are so well aligned with the functions the Legislature has
designated as governmental. 








Although no case is directly on point,
certainly we find much guidance from Texas Water Barges, Inc. v. City of San
Antonio, 21 S.W.3d  at 347.  There, the City of San Antonio entered into
an exclusive contract with Yanaguana Cruises, Inc. to operate barges on the San
Antonio river.  Id. at 350.  Texas River Barges, another barge-operating
company, filed suit against the city when the city removed its barge for
operating on the river without the city’s consent.  Id. at 351.  The San Antonio Court of Appeals held that
the regulation of barges on the city’s waterways was a governmental function
because, as in this case, it touched on several categories specifically listed
in section 101.0215(a), namely, parks, dams, traffic regulation, transportation
systems, and recreational facilities.  Id.
at 356–57 (citing Tex. Civ. Prac. &
Rem. Code § 101.0215(a)(13) (parks), (19) (dams), (21) (traffic
regulation), (22) (transportation systems), (23) (recreational
facilities)).  The only true distinction
between this case and Texas River Barges is that the City of San Antonio
regulated barges on a river, Tex. Civ.
Prac. & Rem. Code § 101.0215(a)(19) (dams and reservoirs), rather
than shuttle services at airports.  Id.
at § 101.0215(a)(10) (airports).  This is
a distinction without a difference and we conclude, as did the San Antonio
Court of Appeals, that the City’s regulation is a governmental function listed
in section 101.0215(a).

The general requirements of the
Texas Tort Claims Act.








Having determined that regulating Ethio’s
shuttle service is a governmental function, we must now consider whether Ethio
pleaded a valid waiver of the City’s sovereign immunity under the Texas Tort
Claims Act because merely engaging in a governmental function does not
automatically waive the City’s sovereign immunity.  Tex.
Civ. Prac. & Rem. Code § 101.0215(a) (providing that a municipality
engaged in a governmental function is liable under this chapter); McKinney,
814 S.W.2d at 865 (“Whereas if the action engaged in by a municipality is
considered to be a governmental function, the [Texas Tort Claims Act] does
apply, and further analysis under the Act is required to determine a
municipality’s potential liability.”) (emphasis added).  Absent a valid waiver under the Texas Tort
Claims Act, the City enjoys sovereign immunity, accord Texas River Barges,
21 S.W.3d at 356, and for the trial court to have jurisdiction over the City,
Ethio must have pleaded a valid waiver of sovereign immunity under the Texas
Tort Claims Act.  Southwest Concrete,
835 S.W.2d at 730 (stating municipalities enjoy sovereign immunity except to
the extent the state waived immunity under the Texas Tort Claims Act); see
Mogayzel v. Tex. Dep’t of Transp., 66 S.W.3d 459, 463  (Tex. App.—Fort Worth 2001, pet. denied)
(stating pleader must allege facts that affirmatively demonstrate the trial
court’s jurisdiction to hear the case) (citing Tex. Ass’n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)).

2.       The
City’s immunity is not waived under the Texas Tort Claims Act.

Sovereign immunity is waived under the
Texas Tort Claims Act for only two types of claims: (1) those involving
property damage, personal injury or death arising from the operation or use of
a motor-driven vehicle or motor-driven equipment; and (2) those involving
personal injury or death caused by a condition or use of tangible personal
property or real property.[7]  Tex.
Civ. Prac. & Rem. Code § 101.021(1)(A), (2).  Ethio has not alleged personal injury or
death, so the second category does not apply. 
But Ethio argues it has alleged a claim that involves property damage
proximately caused by the negligent operation or use of a motor-driven vehicle
or motor-driven equipment.  Id.
at § 101.021(1).  As we discuss
below, we conclude that this argument is a stretch and we reject it.

Ethio’s
negligent misrepresentation and fraud claims.








We first will
address Ethio’s negligent misrepresentation and fraud claims.  Ethio argues these claims would fall within
this category if, for example, the false statements by City employees were made
while the employees were in a vehicle. 
For several reasons, this is a creative, but not valid, argument.  First, Ethio’s petition does not allege that
the City’s tortious conduct occurred via a speaker using or operating a motor
vehicle or motor-driven equipment. See Montes, 2000 WL 1228618 at *2
(stating court must determine trial court’s jurisdiction by looking to
allegations in plaintiff’s petition) (citing Liberty Mut. Ins. Co., 874
S.W.2d at 739).  Second, even if, as
Ethio suggests on appeal, a City employee made misrepresentations or fraudulent
statements from a vehicle, the required nexus between the use of the motor
vehicle and Ethio’s injury still would be absent.  Brown v. Houston Indep. Sch. Dist.,
123 S.W.3d 618, 620 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (“[A]
nexus must exist ‘between the operation or use of the motor-driven vehicle or
equipment and a plaintiff’s injuries.’”) (citing Dallas Area Rapid Transit
v. Whitley, 104 S.W.3d 540, 543 (Tex. 2003)).  

Such a state of the record would prove
only that the injury-causing activity took place while a City employee was in a
vehicle.  Our Texas Supreme Court has
made clear that this alone is insufficient to establish a waiver of sovereign
immunity.  LeLeaux v. Hamshire-Fannett
Indep. Sch. Dist., 835 S.W.2d 49, 52 (Tex. 1992) (“When an injury occurs .
. . and the [vehicle] is only the setting for the injury, immunity for
liability is not waived.”).   Although a motor
vehicle conceivably could have been the setting for the City’s statements,
Ethio’s damages still would not have arisen from the vehicle’s operation or
use; instead, the damage would have arisen from the statements themselves and
from Ethio’s reliance upon them.  See
Brown, 123 S.W.3d at 620–21 (“This nexus requires more than mere
involvement of property . . . . The [vehicle]’s use must have actually caused
the injury.”) (citing Dallas Area Rapid Transit, 104 S.W.3d at
543).  In short, for its negligent
representation and fraud claims, Ethio failed to plead a valid waiver of
sovereign immunity under the Texas Tort Claims Act.   

Ethio’s intentional tort claims.








The same is true of Ethio’s claims for
conspiracy to commit fraud, business disparagement and slander, tortious
interference with contract, conspiracy to tortiously interfere with contract,
and conspiracy to engage in an unlawful restraint of trade.  Again, we must determine whether the Legislature
waived the City’s sovereign immunity under the Texas Tort Claims Act.  See Tex.
Civ. Prac. & Rem. Code § 101.0215(a); McKinney, 814 S.W.2d at
865.  Like Ethio’s other claims, these
claims do not involve the use or operation of a motor-driven vehicle or
motor-driven equipment and fail for that reason.  See id. at § 101.021(1)(A).  In addition, all of these claims are
intentional torts.[8]  The Texas Tort Claims Act does not waive
sovereign immunity for intentional torts. 
Id. at § 101.057(2) (“This chapter does not apply to a claim
arising out of assault, battery, false imprisonment, or any other
intentional tort . . . .”) (emphasis added); Texas River Barges, 21
S.W.3d at 356 (“Under the Act, a municipality is immune for liability for
intentional torts.”).  Consequently,
Ethio’s intentional tort claims also fail.

Conclusion

In conclusion, the
City’s regulation of private shuttle services from the airports it owns is a
governmental function, for which the City enjoys sovereign immunity.  In addition, Ethio’s pleadings do not
establish the necessary waiver of the City’s sovereign immunity under the Texas
Tort Claims Act.  As a result, we
conclude the trial court correctly granted the City’s plea to the jurisdiction
and we affirm.

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment
rendered and Opinion filed May 12, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Frost.











[1]  Yellow Cab is
the assumed name of the Greater Houston Transportation Company.





[2]  Ethio filed
suit against other defendants as well but they are not parties to this
appeal.  The trial court granted the
City’s motion to sever this portion of Ethio’s suit.





[3]  Section
101.0215(b) of the Texas Tort Claims Act provides that a municipality may be
liable for damages that arise from its proprietary, as opposed to governmental,
functions.  Tex. Civ. Prac. & Rem. Code § 101.0215(b).  A City does not enjoy sovereign immunity when
it is engaged in a proprietary function. 
Gates v. City of Dallas, 704 S.W.2d 737, 739 (Tex. 1986) (“[P]roprietary
functions have subjected municipal corporations to the same duties and
liabilities as those incurred by private persons and corporations.”).





[4]  Determining a
municipality’s amenability to suit is a two-step inquiry. First we determine
whether the function is governmental or proprietary.  Dalon v. City of DeSoto, 852 S.W.2d
530, 536 (Tex. App.—Dallas 1992, writ denied) (citing McKinney v. City of
Gainesville, 814 S.W.2d 862, 865 
(Tex. App.—Fort Worth 1991, no writ)). 
If governmental, the second step is to determine whether liability is
waived under the Texas Tort Claims Act.  See
id. (citing Tex. Civ. Prac. & Rem. Code § 101.021; McKinney, 814
S.W.2d at 865).





[5]  The parties
correctly note the lack of case law directly on point.





[6]  Section
101.0215(a) provides that the following functions are governmental:

1.                 
police and fire protection and control;

2.                 
health and sanitation services;

3.                 
street construction and design;

4.                 
bridge construction and maintenance and street
maintenance;

5.                 
cemeteries and cemetery care;

6.                 
garbage and solid waste removal, collection, and
disposal;

7.                 
establishment and maintenance of jails;

8.                 
hospitals;

9.                 
sanitary and storm sewers;

10.             
airports;

11.             
waterworks;

12.             
repair garages;

13.             
parks and zoos;

14.             
museums;

15.             
libraries and library maintenance;

16.             
civic, convention centers, or coliseums;

17.             
community, neighborhood, or senior citizen centers;

18.             
operation of emergency ambulance service;

19.             
dams and reservoirs;

20.             
warning signals;

21.             
regulation of traffic;

22.             
transportation systems;

23.             
recreational facilities, including but not limited to
swimming pools, beaches, and marinas;

24.             
vehicle and motor driven equipment maintenance;

25.             
parking facilities;

26.             
tax collection;

27.             
fireworks displays;

28.             
building codes and inspection;

29.             
zoning, planning, and plat approval;

30.             
engineering functions;

31.             
maintenance of traffic signals, signs, and hazards;

32.             
water and sewer service;

33.             
animal control;

34.             
community development or urban renewal activities . . .
;

35.             
latchkey programs conducted exclusively on a school
campus . . . ;

36.             
enforcement of land use restrictions . . . .

Tex. Civ. Prac. & Rem. Code §
101.0215(a).





[7]  Both types
require an otherwise cognizable claim.  Tex. Civ. Prac. & Rem. Code §
101.021(1)(B) (“A governmental unit in the state is liable . . . if . . . the
employee would be personally liable to the claimant according to Texas law.”);
§101.021(2) (“A governmental unit in the state is liable . . . if . . . the
governmental unit, were it a private person, be liable to the claimant
according to Texas law.”).





[8]  See
Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996)
(requiring specific  intent for
conspiracy); Hurlbut v. Gulf Atlantic Life Ins. Co., 749 S.W.2d 762, 766
(Tex. 1987) (requiring malice as intent for business disparagement and
slander); Holloway v. Skinner, 898 S.W.2d 793, 795 (Tex. 1995)
(requiring intentional act of interference for tortious interference with
contract).