NUMBER 13-01-00786-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 

 



CITY OF MISSION,                                                               Appellant,

 

                                                   v.

 

VERONICA GARZA CANTU,

ANGELICA SIFUENTES, 

REYNALDO ALVARADO AND 

SILVIA ALVARADO,
INDIVIDUALLY 

AND AS REPRESENTATIVE
OF THE  

ESTATE OF NERIA N.
ALVARADO,

DECEASED, ET AL.,                                                             
Appellees.

 

 



                         On appeal from the 92nd District Court

                                  of Hidalgo
County, Texas.

 

 



                                   O P I N I O N

 








                    Before Justices Hinojosa, Castillo and
Chavez[1]

                                  Opinion by Justice Castillo

 

The City of
Mission presents an interlocutory appeal from the denial of a plea to the
jurisdiction.[2]  In two issues, the City argues that the trial
court improperly denied its plea to the jurisdiction because the Texas Tort
Claims Act does not waive sovereign immunity for a municipality=s allegedly
negligent design of a city road.   We
reverse and render.

FACTUAL
BACKGROUND








Veronica Garza
Cantu and several friends were traveling south on Glasscock Road, a two-lane
road.  In front of the County Estates
subdivision, the road widens from forty to sixty feet in width.  At the end of the subdivision, the road
returns to its original forty-foot width. 
No particular markings denote either the expansion of the road or its
return to its original dimensions.  Near
this area, Cantu, the driver, while traveling southbound, attempted to pass
another vehicle, driven by Robert Treviño, traveling in the same
direction.  At that point the road
returned to its normal forty-foot width. 
Unable to overtake Treviño=s vehicle
traveling parallel to hers and seeing an approaching northbound vehicle, Cantu
attempted to return to the southbound lane. 
In doing so, she lost control of her vehicle, left the road, and came to
a stop after colliding with a tree.  Two passengers
in her car were killed, and the others were injured.   








Suit was filed
by Yvonne Cantu, Angelica Sifuentes, Reynaldo Alvarado, and Silvia Alvarado,
individually and on behalf of the estate of Neria N. Alvarado, deceased,
against the City of Mission and other private defendants.[3]  A petition in intervention was filed by Jose
Guadalupe Aguirre, individually and as representative of the estate of Maria G.
Aguirre, deceased, and Maria Luisa Lopez Aguirre, individually.  Both the plaintiffs and
the intervenors (hereinafter referred to jointly as Aappellees@) asserted in
their petitions that the change in the width of the roadway without any road
sign or warning device was a dangerous condition constituting a special defect
for which they alleged the City was liable by virtue of failing to warn or make
reasonably safe.  They also alleged the
City failed to properly construct and design the relevant portion of road,
specifically by not having proper barriers, signs, or warning devices and by
failing to place warning signs and traffic control devices listed in the 1980
Texas Manual on Uniform Traffic Control Devices for Streets and Highways (AMUTCD@).  The City filed a plea to the jurisdiction as
to both the plaintiffs= petition and
the intervenors= petition,
asserting sovereign immunity under the provisions of the Texas Tort Claims Act.[4]  The trial court denied the plea, and this
appeal ensued.

STANDARD OF
REVIEW

This appeal is
strictly limited to our review of the trial court=s ruling on the plea to the jurisdiction.  Tex.
Civ. Prac. & Rem. Code Ann. '51.014(a)(8) (Vernon Supp. 2002).  The appellees bear the burden to allege facts
affirmatively demonstrating the trial court=s jurisdiction to hear this case.  Tex. Ass=n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993);  Mission Consol. Indep. Sch. Dist. v.
Flores, 39 S.W.3d 674, 676 (Tex. App.BCorpus Christi
2001, no pet.).  ASubject matter
jurisdiction is never presumed and cannot be waived.@  Tex. Ass=n of Bus., 852 S.W.2d at
443-44.  Since a governmental unit is
protected from suit by sovereign immunity, pleadings in a suit against a
governmental unit must affirmatively demonstrate, either by reference to a
statute or express legislative permission, that the legislature consented to
the suit.  Tex. Dep=t of Transp. v.
Jones,
8 S.W.3d 636, 638 (Tex. 1999).  Absent
the government=s consent to
suit, the trial court has no jurisdiction.  Id.








On appeal,
because the question of subject matter jurisdiction is a legal question, we
review the trial court's ruling on a plea to the jurisdiction under a de
novo standard of review.  Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).  To determine whether appellees have
affirmatively demonstrated the court=s jurisdiction
to hear the case, we consider the facts alleged in the petitions, and to the
extent it is relevant to the jurisdictional issue, the evidence submitted by
the parties to the trial court, if any.  Tex.
Natural Res. Conservation Comm=n v. White, 46 S.W.3d
864, 868 (Tex. 2001); Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
554 (Tex. 2000).  Our task is not
to decide the merits of the case but rather to examine the petitions, taking as
true the facts pled,[5]
and determine whether those facts support jurisdiction in the trial court.  Baston v. City of Port Isabel, 49
S.W.3d 425, 427-28 (Tex. App.BCorpus Christi
2001, pet. denied).








We must
construe the pleadings in the plaintiff=s favor and
look to the pleader=s intent.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002); Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804
(Tex. 1989).  If a plaintiff pleads facts
that affirmatively demonstrate an absence of jurisdiction and such defect is
incurable, then the cause is properly dismissed.  Peek, 779 S.W.2d at 804-05; City of
Austin v. L.S. Ranch, 970 S.W.2d 750, 753 (Tex. App.BAustin 1998, no
pet.).  However, the mere failure of a
petition to state a cause of action does not show a want of jurisdiction in the
court.  Bybee v. Fireman=s Fund Ins. Co., 160 Tex. 429,
331 S.W.2d 910, 917 (1960).  If the
plaintiff=s pleadings are
insufficient to demonstrate the court=s
jurisdiction,  but do not affirmatively
show incurable defects in jurisdiction, the proper remedy is to allow the
plaintiff an opportunity to amend before dismissal.  Brown, 80 S.W.3d at 555; Peek, 779
S.W.2d at 805.  

ISSUES
PRESENTED

In the present
case, the City asserts that it is entitled to sovereign immunity as to
appellees= claims.  Specifically, the City claims that the trial
court erred in denying the plea to the jurisdiction because: (1) governmental
immunity barred appellees= claims and had
not been waived by the Texas Tort Claims Act; and (2) the trial court had no
jurisdiction over a claim against it for personal injury damages allegedly
caused by the design of a city road.   As
we have noted, both issues raise the same basic argument: the trial court erred
in denying the plea to the jurisdiction because sovereign immunity is not
waived under the Texas Tort Claims act for negligent design of a roadway,
including the decision whether to equip the roadway with certain warning
devices or signs.  Hence, we will
consider these two issues as one question, which we will review in the course
of determining whether appellees have stated a claim over which the trial court
in the instant case had jurisdiction. 

THE TEXAS TORT CLAIMS
ACT AND


WAIVER OF SOVEREIGN
IMMUNITY FOR MUNICIPALITIES

 








As a general
rule, government entities are immune from tort liability under the doctrine of
sovereign immunity unless the legislature has waived immunity.  Dallas 
Co. Mental Health & Mental Retardation v. Bossley, 968 S.W.2d
339, 341 (Tex. 1998).  Sovereign immunity
extends to municipalities when they are carrying out governmental
functions.  City of Galveston v.
Posnainsky, 62 Tex. 118, 127 (1884). 
Municipalities, then, are immune from tort liability under the doctrine
of sovereign immunity for governmental functions unless such immunity is
specifically waived.[6]  City of La Porte v. Barfield, 898
S.W.2d 288, 291 (Tex. 1995). 

The Texas Tort
Claims Act (Athe Act@) provides a
limited waiver of the sovereign immunity of governmental units, allowing them
to be held liable for:

(1) property
damage, personal injury, and death proximately caused by the wrongful act or
omission or the negligence of an employee acting within his scope of employment
if: 

 

(A) the
property damage, personal injury, or death arises from the operation or use of
a motor-driven vehicle or motor-driven equipment; and

 

(B) the
employee would be personally liable to the claimant according to Texas law; and

 

(2) personal
injury and death so caused by a condition or use of tangible personal or real
property if the government unit would, were it a private person, be liable to
the claimant according to Texas law.  

 

Tex. Civ. Prac. & Rem. Code Ann. '101.021 (Vernon 1997).  








Although the
Act speaks in terms of waiver of immunity from liability, it also waives
immunity from suit to the same extent.  Tex. Dep=t of Crim. Justice v.
Miller,
51 S.W.3d 583, 587 (Tex. 2001)(citing Tex.
Civ. Prac. & Rem. Code Ann. '101.025(a)(Vernon 1997))(ASovereign immunity to
suit is waived and abolished to the extent of liability created by this
chapter.@).  However, the mere invocation of the Act in a
petition does not in itself waive sovereign immunity and confer jurisdiction on
the trial court.  Id.  Rather, the claim raised must fall within the
specific scope of the waiver of immunity provided by the Act and so
affirmatively demonstrate the trial court=s jurisdiction to hear
the case.  Id.








 The first question that must be considered
then, in the case of municipalities, is whether the claimed tort action arises
from a governmental function, to which the Act applies, or a proprietary
function that is not covered by the Act. 
Dalon v. City of De Soto, 852 S.W.2d 530, 535 (Tex. App.BDallas 1992, writ
denied).  For this determination, the Act
provides section 101.0215.  Tex. Civ. Prac. & Rem. Code Ann.  ' 101. 0215 (Vernon Supp.
2002).  This section states that a Amunicipality is liable
under this chapter for damages arising from its governmental functions@ and goes on to
delineate a non-exclusive list of governmental functions.  Tex.
Civ. Prac. & Rem. Code Ann. '101. 0215(a)(1)-(36)(Vernon Supp. 2002).  It also explicitly states that A[t]his chapter@ does not apply to
liability for damages arising from a municipality=s proprietary functions, again providing a
non-exclusive list of the same and then specifying that the activities listed
under subsection (a) are not to be considered proprietary.  Tex.
Civ. Prac. & Rem. Code Ann. 101. 0215(b),(c) (Vernon Supp. 2002). 
Section 101.0215 does not itself operate as an independent waiver of
sovereign immunity but, rather, brings certain municipal functions, which would
normally be clothed with sovereign immunity, within the purview of the Texas
Tort Claims Act, thus subjecting municipalities to liability for claims arising
from such functions if the claims fall within the areas of liability provided
by section 101.021 of the Act.[7]
 Bellnoa v. City of Austin, 894 S.W.2d
821, 826 (Tex. App.BAustin 1995, no
writ);  Alvarado v. City of Brownsville, 865
S.W.2d 148, 155 (Tex. App.BCorpus Christi 1993), rev=d on other grounds, 897 S.W.2d 750 (Tex.
1995);[8]
McKinney
v. City of Gainsville, 814 S.W.2d 862, 865 (Tex. App.BFort Worth 1991, no writ). 













Thus, even though it
is established that a claim arises from a governmental function listed in
section 101.0215 and the Act applies, the claim made must still fall within the
scope of section 101.021 in order for a municipality to be held liable.[9]
 City of Midland v. Sullivan, 33
S.W.3d 1, 7 (Tex. App.BEl Paso 2000, pet.
dism=d w.o.j.); City of El Paso v.
Hernandez,
16 S.W.3d 409, 414 (Tex. App.BEl Paso 2000, pet.
denied); City
of Houston v. Rushing, 7 S.W.3d 909, 914 (Tex. App.BHouston [1st Dist.] 1999, pet. denied)(en
banc); Bellnoa,
894 S.W.2d at 826; Alvarado, 865 S.W.2d at 155.  However, even if the claim meets this
requirement, waiver of sovereign immunity is not yet established.  The legislature has also provided a number of
exclusions and exceptions to the waiver of sovereign immunity, which serve to
preserve sovereign immunity even when the claimed action falls within the scope
of section 101.021.  See Tex. Civ. Prac. & Rem. Code Ann. ''101.051-101.066
(Vernon 1997 & Supp. 2002)(listed in subchapter C of the Act which is
titled, AExclusions and
Exceptions@).  Where such exceptions or exclusions to the
Act apply, sovereign immunity is not waived. 
Id.; see Delaney v. Univ. of Houston, 835 S.W.2d 56, 58
(Tex. 1992)(even if immunity waived under section 101.021, suit still
prohibited if claim falls under exception); Fernandez v. City of El Paso,
876 S.W.2d 370, 375-376 (Tex. App.BEl Paso 1993, writ
denied)(exceptions to waiver of sovereign immunity effectively reinstate
sovereign immunity where applicable); see also Alvarado, 865
S.W.2d at 155 (Act contains several exceptions to waiver of immunity which
limit liability, and analysis of liability must include determining whether
claim falls within such exceptions).  

Therefore, if a
plaintiff fails to state a claim that falls within the scope of 

section 101.021, or if
the claim stated falls within an exception to the application of the Act, then
sovereign immunity is not waived as to that claim, and the question of
negligence cannot be determined by the trial court.  Alvarado, 865 S.W.2d at 155. 

In the present case,
appellees, in their respective petitions, have cited no other statutory or
legislative authority providing for the waiver of sovereign immunity apart from
the Texas Tort Claims Act.   Likewise, appellees
do not assert that the City was engaged in a proprietary function, but
specifically invoke section 101.0215, asserting the applicability of
subsections (a)(3),(a)(4),(a)(20),(a)(21),(a)(29), and (a)(30) of that statute.[10]  The City does not contest that the claims
made arise from governmental functions. 
Thus, there is no dispute by any party that the claims raised would be
governed by the provisions of the Texas Tort Claims Act. 








Accordingly, with the
initial question of the applicability of the Act  resolved, we must now determine whether
appellees have stated a claim cognizable under that Act, that is, whether they
have raised a claim which falls within the scope of liability recognized in
section 101.021 and, if they have done so, whether any exceptions to the
application of the Act apply so as to render inapplicable the waiver of
immunity.  Bellnoa, 894 S.W.2d at
826; Alvarado, 865 S.W.2d at 155. 
In doing so, we review the petition and Ato the extent
it is relevant to the jurisdictional issues, the evidence submitted by the
parties.@  White, 46 S.W.3d at 868.  We must ascertain the nature of the claim
raised, examine the tort claims act to determine the scope of waiver of
sovereign immunity relevant to such claim, and then consider the particular
facts of the claim to decide whether it comes within that scope so as to invoke
jurisdiction in the trial court. 
Finally, if we find that the facts of any claim before us come within
the scope of a waiver, we must consider whether any of the statutory exceptions
to the Act apply before we can conclusively determine whether sovereign
immunity has been waived.  Alvarado, 865 S.W.2d at 155. 

APPELLEES= CLAIMS

 The Fourth Amended Original Petition








In their fourth
amended original petition, plaintiff-appellees[11]
allege that a Adangerous and
hazardous condition existed upon the entire width@ of the widened section of Glasscock Road
which proximately caused the accident and was a substantial contributing factor
to the same.  Although not explicitly
stating what was the Adangerous and
hazardous condition@ of which they
complain, in other sections of the petition, appellees state that North
Glasscock roadA abruptly and
without warning to southbound drivers, returned from a width of (60) feet to
the pre-existing two lane highway having a width of forty (40) feet,@ and complain
that Athere had not
been erected, nor did there exist road signs . . . fog line, shoulder stripe,
guard rails or other devices to warn the traveling public of the abrupt change
in the width of the highway.@[12]

Against the
City of Mission, plaintiff-appellees specifically complain that the City was Anegligent
generally and in the following particulars:@

a.  In causing, allowing or permitting the
existence of a dangerous and hazardous condition at the location of the
accident in question to exist such that an artificially widened portion of the
road existed for substantial distance along North Glasscock Road;

 

b.  In failing to properly design the improved
widened portion of North Glasscock Road by not placing a barrier or proper
warning devices and signs, road stripes, reflectors or other means and methods
of advising the traveling public of the artificially dangerous condition and
preventing the traveling vehicles from using the widened portion of the road;

 

c.  In failing to properly construct the widened
portion of the said highway in accordance with generally accepted standards,
warrants, protocols including barriers, signs, reflectors and striping to warn
the traveling public of the dangerous condition;

 

d.  In violating regulations, design manual and
maintenance guidelines and warrants relative to the maintenance, signage,
construction and design of roadways applicable in the State of Texas; and

 

e.  In failing to provide a free recovery zone
because of an insufficient, substandard and artificially widened highway
including the failure to insure that the traveling public was properly warned
of the abrupt change in the contour and width of the highway immediately south
of the subdivision; in failing to construct a shoulder or other free recovery
zone south of the widened portion of the highway and otherwise failing to
utilize generally accepted engineering standards and protocols so as to prevent
the existence and use of an artificially dangerous, unusual and unexpected
condition on said highway.  

 








Plaintiff-appellees
also allege that the City had the Apower and duty
to exercise control over traffic and road devices along Glasscock Road in the
area where the widened road exists@ and further
alleged that the City had actual and constructive notice and knowledge of the
dangerous condition prior to the accident and failed to take remedial action to
correct the dangerous condition, making it Aliable under the Texas Tort Claims Act
Statute, Section 101.0215."[13]  

Plaintiff-appellees
further allege that the condition of the road constitutes a special defect and
that the City has a duty to warn of the dangerous condition or to

make the
condition reasonably safe.  They claim in
their petition that the City=s 

immunity is
waived under Texas Civil Practice and Remedies Code 

sections
101.022(b), 101.0215(a)(3), (a)(4), (a)(20), (a)(21), (a)(29), and (a)(30),[14]
and Aexpressly
waived@ under section
101.025.  Finally, plaintiff-appellees
allege that the City, as well as their engineers, failed to follow the 1980
Texas Manual on Uniform Traffic Control Devices for Streets and Highways (AMUTCD@), as amended,
pertaining to warning signs and the placement of traffic control devices. 

First Amended
Petition in Intervention








In their
intervention petition as amended, intervenor-appellees[15]
likewise claimed an unspecified dangerous and hazardous condition was the
proximate cause of the accident but specified that Athe widened
portion of said highway@ was the Asubstantial and
contributing factor@ in the cause
of the accident.  Like the plaintiffs,
the intervenors state that North Glasscock road, Aabruptly and without warning to southbound
drivers, returned from a width of sixty (60) feet to the pre-existing two lane
highway having a width of forty (40) feet,@ and complain
that Athere had not
been erected, nor did there exist road signs . . . fog line, shoulder stripe,
guard rails or other devices to warn the traveling public of the abrupt change
in the width of the highway.@           Likewise,
in reference to their specific complaints against the City, the
intervenor-appellees allege that the City was Anegligent generally@ as well as 

a.  In causing, allowing or permitting the
existence of a dangerous and hazardous condition at the location of the
accident in question to exist such that an artificially widened portion of the
road existed for substantial distance along North Glasscock Road;

 

b.  In failing to properly design the improved
widened portion of North Glasscock Road by not placing a barrier or proper
warning devices and signs, road stripes, reflectors or other means and methods
of advising the public of the artificially dangerous condition and/or
preventing the driver and vehicles from using the widened portion of the road;

 

c.  In failing to properly construct the widened
portion of the said highway in accordance with generally accepted Tex D.O.T.
rules, regulations, standards, M.U.T.C.D. standards, warrants, protocols, and
codes, including barriers, signs, reflectors and striping to warn the traveling
public of the dangerous condition;

 








d.  In violating state regulations, design manual
and maintenance guidelines and warrants relative to the maintenance, sign,
construction and design of roadways applicable to the State of Texas, and

 

e.  In failing to provide a free recovery zone to
drivers because of an insufficient, substandard and artificially widened
highway including the failure to insure that the traveling public was properly
warned of the abrupt change in the contour and width of the highway immediately
south of the subdivision;

 

f.  In failing to construct a shoulder or other
free recovery zone south of the widened portion of the highway and otherwise
failing to utilize generally accepted engineering standards, designs, and
protocols so as to prevent the existence and use of an artificially dangerous,
unusual and unexpected condition on said highway.

 

The
intervenor-appellees=petition
mirrored the allegations in the Fourth Amended Petition quoted above pertaining
to notice, duty, Aspecial defect,@ specific
sections of the Texas Tort Claims Act under which plaintiff-appellees asserted
sovereign immunity was waived, and violations of the  MUTCD. 


Categories of
Claims








In both
petitions, the claims fall into two categories:[16]
(1) complaints related to the design of the road, specifically the widening and
narrowing of the road and the lack of a free recovery zone or shoulder south of
the widened area; and (2) complaints regarding the lack of warning devices such
as road signs, traffic signals, barriers, fog lines, reflectors and
striping.  Both categories are inclusive
of the claims made as to the Aconstruction@ of the road
and the failure to follow certain regulations and standards, including the
MUTCD,[17]
since the only complaints made regarding construction, and the failure to
comply with certain standards, relate to the road=s initial design and the failure to
include warning devices regarding the same.[18]  Appellees specifically cite to sections
101.215 (and various subsections thereunder), 101.025, and 101.022(b) of the
civil practices and remedies code as providing the waiver of immunity upon
which they rely.








The first cited
section, section 101.0215, as previously noted, does not itself provide a
waiver of sovereign immunity.  The second
cited section, section 101.25, though indeed an express waiver of  sovereign immunity, only waives immunity as
to liability created under the Act.  Tex. Civ. Prac. & Rem. Code Ann. '101.025(a)(Vernon
1997).  Thus, the invocation of either of
these sections by appellees does not suffice to establish a waiver of the City=s sovereign
immunity.  Rather, facts must be pled
which raise a claim falling within the scope of section 101.021.   Miller, 51 S.W.3d at 587; Alvarado,
865 S.W.2d at 155.

Both petitions
attempt to raise claims which would fall within the scope of section
101.021(2), namely claims as to the condition of real property.  Appellees specifically allege a special
defect under section 101.022(b). 
Appellees raise no claims under section 101.021(1) of the Act.  Tex.
Civ. Prac. & Rem. Code Ann. '101.021(1)(Vernon
1997).  Thus to overcome their first @statutory
hurdle,@ appellees must
show that the claims raised are within the scope of section 101.021(2).  Alvarado, 865 S.W.2d at 155.  

APPELLEES= CLAIMS UNDER
SECTION 101.021(2)








The Texas Tort
Claims Act recognizes liability for two types of dangerous conditions of real
property under section 101.021(2) B premise
defects and special defects.  Tex. Civ. Prac. & Rem. Code Ann. '101.022 (Vernon
1997).  Where it is asserted that the
injury is caused by a premise defect, the governmental unit owes to the
claimant only the same duty as a private person owes to a licensee on private
property.  Tex. Civ. Prac. & Rem. Code Ann. '101.022(a)
(Vernon 1997).  Thus, the government=s only duty is
not to injure the claimant willfully, wantonly, or through gross
negligence.  State Dep=t of Highways
& Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992) (op. on
reh=g); State v.
Tennison, 509 S.W.2d 560, 562 (Tex. 1974). 
The exception to this rule is that where a landowner has actual
knowledge of a dangerous condition, and the licensee does not, the landowner
then has the duty either to warn the licensee or to make the condition
reasonably safe.  Tennison, 509
S.W.2d at 562. 

However, the
limitation of the government=s duty to
claimants to that duty owed by a private landowner to a licensee does not apply
to the government=s duty to warn
of special defects such as excavations or obstructions on highways, roads, or
streets or to warn of the absence, condition, or malfunction of traffic
regulators.  Tex. Civ. Prac. & Rem. Code Ann. '101.022(b)
(Vernon 1997).  Where there exists a special defect, the
government unit owes the same duty to users as a private landowner owes to an
invitee.  Payne, 838 S.W.2d at
237.  That is, the governmental unit must
exercise ordinary care to protect the user from a dangerous condition of which
the government unit is or reasonably should be aware.  Id. 
A special defect is generally limited to those conditions which occur on
the surface of the road, or pose a threat to ordinary users of the
roadway.  Id. at 238.

The question of
whether an alleged defect is a special defect or premise defect, and thus what
duty is owed, is a question of law and therefore considered de novo. State
v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999)(per curiam).  

Special Defect
Claim








The appellees= petitions
specifically assert that the condition of the road constituted a Aspecial defect.@  No claim was made in the petitions that the
dangerous condition complained constituted a premise defect, and hence we need
not consider whether appellees pled sufficient facts to allege a premise
defect.[19]
 See Tex. Dep=t of Transp. v.
Velasco,
40 S.W.3d 702, 704-705 (Tex. App.BSan Antonio
2001, no pet.)(where plaintiffs did not plead a particular claim in the
petition, such could not be the basis for jurisdiction and so was not
considered in determining jurisdiction in review of denial of plea to the
jurisdiction on appeal).

A dangerous
condition need not have been created or caused by the government unit to
constitute a special defect.  County
of Harris v. Eaton, 573 S.W.2d 177, 179 (Tex. 1978).  However, the condition needs to be analogous
to, and of the same degree as, Aexcavations or
obstructions on highways, roads, or streets.@  Tex. Civ. Prac. & Rem. Code Ann. ' 101.022(b)
(Vernon 1997); Johnson v. Tex. Dep=t of Transp., 905 S.W.2d
394, 399 (Tex. App.BAustin 1995, no
writ).  It must present Aan unusual and
unexpected danger to ordinary users of roadways,@ Payne, 838 S.W.2d at 238, rather
than Aa
long-standing, routine, or permanent defect.@ Tarrant County Water Control &
Improvement Dist. No. 1 v. Crossland, 781 S.W.2d 427, 433 (Tex. App.BFort Worth
1989, writ denied). 








The design of a
roadway is a permanent feature and thus not an unusual or unexpected
danger.  See Villarreal v. State,
810 S.W.2d 419, 422 (Tex. App.BDallas 1991,
writ denied)(median which was long-standing modification in roadway was not a
special defect).  Nor is it of the same
nature, kind or class as an excavation or obstruction which unexpectedly and
physically impairs a vehicle=s ability to
travel on the roadway.  Rodriguez,
985 S.W.2d at 85-86 (complaints of defective detour design which included a
sharp ninety degree right turn and failure to include signs warning of the same
did not state a claim for a special defect as a matter of law).  Accordingly, a claim arising from allegedly
negligent road design does not state a claim for a special defect.  Id. 
For the same reasons, the absence of road signs, safety devices,
or traffic signals on or near a roadway cannot be a special defect.  Id.; see also Wenzel v. City of New
Braunfels, 852 S.W.2d 97, 100 (Tex. App.BAustin 1993, no writ)(inadequate lighting
was not an excavation or roadway obstruction and so not a special defect);
Mogayzel v. Tex. Dep=t of Transp., 66 S.W.3d 459,
466 (Tex. App.BFort Worth
2001, pet. denied)(plaintiff failed to show how lack of barriers, guardrails,
warning signs or barrels constituted special defect).








Accordingly,
neither the expanded nor the normal width portions of the road nor the lack of
warning signs, barriers, or other warning or safety devices as alleged in the
petitions before us are special defects under law.  Appellees= petitions therefore failed to allege
facts which raise a special defect claim. 
No other claim of liability under section 101.021 was pled, nor was a
claim included asserting the violation of any other duty under section 101.022,
such as those related to a premise defect.[20]  Appellees have therefore failed to state a
claim within the scope of liability established by section 101.021 of the Act
and thus failed to demonstrate that the trial court has any jurisdiction over
this cause.[21]


THE
DISCRETIONARY FUNCTION EXCEPTION AND THE 

NEGLIGENT
IMPLEMENTATION OF POLICY 

 








The City also
asserts that sovereign immunity is not waived as to the claims made in the
petitions because of the discretionary function exception provided in section
101.056 of the Act.[22]
 Tex. Civ. Prac. & Rem. Code Ann. '101.056 (Vernon
1997).  Appellees counter that the
discretionary function exemption does not apply because there Ais no evidence
in the record@ of a Aconscious
exercise of discretion@ and,
alternatively, that the failure to Aproperly mark
and maintain@ the road[23]
is a negligent implementation of a policy decision[24]
and so subjects the City to liability.  

The waivers of
immunity provided by the Texas Tort Claims Act do not apply to discretionary
functions B  that is, to a governmental unit=s failure to
act, its decision to act, or its failure to decide to act B when the law
leaves such actions or decisions to the discretion of the governmental unit.  Tex.
Civ. Prac. & Rem. Code Ann. '101.056 (Vernon
1997); City of Fort Worth v. Robles, 51 S.W.3d 436, 440 (Tex. App.BFort Worth
2001, pet. denied).        








Appellees,
while acknowledging that section 101.056 protects the City from liability for
discretionary functions, argue that the City has failed to bring forth any
evidence that the City Aconscious[ly]@ exercised its
discretion.  Presumably appellees are
arguing that there is no evidence of a meeting or formal decision in which the
City decided to design (or adopt a particular design of) the road  in a particular fashion or formally decided
on whether and what safety features to install. 
However, the very language of section 101.056 rebuffs any claim that
formal action on the part of a governmental unit is necessary for the
applicability of the section.[25]  The salient question in determining whether a
certain function is discretionary, and thus whether section 101.056 applies, is
not whether the governmental unit Aformally@ exercised its
discretionary power but rather whether the function in question was one which
was within the scope of the governmental units= discretionary power, that is, not
mandatory by law.[26]
 See 
Tex. Civ. Prac. & Rem.
Code Ann. '101.056(a)(Vernon
1997)(A... an act that
the unit is not required by law to perform@); Tex.
Civ. Prac. & Rem. Code Ann. '101.056(b)(Vernon
1997)(Aif the law
leaves the performance or nonperformance of the act to the discretion of the
governmental unit@)(emphasis
added).   Accordingly, the determination
as to whether a certain governmental function is discretionary is a question of
law, not of fact.  State v. San Miguel,
2 S.W.3d 249, 251 (Tex. 1999)(per curiam). 
Thus, the City had no duty to bring forth evidence that a Aconscious
exercise@ of discretion
was made in order for the discretionary function exception to be applicable.  













As to the  issue of whether the decisions, actions, and
inactions complained of in appellees= petitions are
discretionary, it is well established that both road design and the failure to
equip a road with warning devices or traffic signals, either at the time of the
original construction[27]
or at a later time, are discretionary decisions, and governmental units are
immune from liability and suit for such claims unless the unit was required by
law to take or refrain from a certain action. 
See id. (holding that decisions about highway design and about
what type of safety features to install are discretionary policy decisions and
finding no cognizable claim under the Texas Tort Claims Act for complaint as to
type of marker or safety device used); see also Tex. Dep=t of Transp. v.
Ramirez,
74 S.W.3d 864, 867 (Tex. 2002)(stating that governmental agency may not be sued
for the design of public work such as a roadway or for the failure to install
safety features such as barriers and guard rails as such are discretionary
duties for which immunity is retained and finding that plea of dangerous
condition arising from highway design and lack of safety features did not state
a claim under the Texas Tort Claims Act); Rodriguez, 985 S.W.2d at 86
(rejecting complaint as to design of detour and lack of warning signs because
decisions were discretionary); Mogayzel, 66 S.W.3d at 466 (deciding that
no cause of action was stated in claim that highway design created dangerous
condition); Siders v. State, 970 S.W.2d 189, 192-93 (Tex. App.BDallas 1998,
pet. denied)(finding that placement of stop signs and other features are
discretionary and cannot give rise to liability for claims related to failure
to remove old stop sign); Maxwell v. Tex. Dep=t of Transp., 880 S.W.2d
461, 464 (Tex. App.BAustin 1994,
writ denied)(determining that sovereign immunity was not waived for claim of
alleged dangerous design of culvert and lack of safety features or warning
devices);  City of El Paso v. Ayoub,
787 S.W.2d 553, 554 (Tex. App.BEl Paso 1990,
writ denied)(holding that design, placement, and upgrading of safety features,
such as guardrails and barricades, are immune from liability as these are
discretionary powers);  Palmer v. City
of Benbrook, 607 S.W.2d 295, 299 (Tex. Civ. App.BFort Worth
1980, writ ref=d
n.r.e.)(holding that decision as to width of traffic lanes is discretionary
act, and thus city could not be held liable for 
decision on width of road).              
               

Furthermore,
section 101.060(a) of the Act specifically applies this principle to traffic
control devices, preserving sovereign immunity for the decision to install or
not install road signs and warning devices on roads where not mandated by law.[28]  Tex.
Civ. Prac. & Rem. Code Ann. '101.060(a)(Vernon
1997); see also Rodriguez, 985 S.W.2d at 86.








Thus the
decisions, acts, and failures to act complained of in the petitions in the
instant case are discretionary ones, and, accordingly, sovereign immunity was
preserved by sections 101.056 and 101.060, in the absence of laws mandating
them or mandating contrary action,[29]
whether or not any Aconscious
exercise of discretion@ on the part of
the City took place.  In other words,
under the Tort Claims Act, the City cannot be held liable for the Afailure to
perform an act that it is not required by law to perform or for decisions that
are purely discretionary,@ as these are.  Zambory v. City of Dallas, 838 S.W.2d 580,
582 (Tex. App.BDallas 1992,
writ denied). 

Appellees next
argue that jurisdiction exists because the City can be held liable under the
theory of negligent implementation of its policy decisions.








Negligent
implementation of policy is a theory of liability predicated on the distinction
between negligent formulation of 
discretionary policy, for which sovereign immunity is preserved, and
negligent implementation of that same formulated discretionary policy,
for which it is not.  City of
Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995).  While discretionary policy decisions are
exempt from tort claims act waivers, decisions and actions at the operational
level are not.  State v. Terrell,
588 S.W.2d 784, 787-88 (Tex. 1979).  This
distinction prevents judicial review of policy decisions while allowing for
liability for the negligent carrying out of any policy decision made.   Id. at 788.  Thus, for example, the decision by a
governmental unit whether and how to detect speeding individuals is not
reviewable, but once a policy is enacted that speeding individuals will be
detected, and how, damages arising out of the negligent implementation of such
policy can subject the governmental unit to liability.  Id.

By invoking the
applicability of such doctrine, a party necessarily concedes that the policy decision
which was adopted was discretionary and thus that the discretionary action
exception of section 101.056 applies, but asserts that there has been some
negligence in the carrying out, or implementation, of such policy decision.  Accordingly, to state a negligent
implementation claim, a plaintiff must identify a particular policy adopted by
the governmental unit and state facts which raise a claim that the policy was
negligently carried out at the operational level.  See Crossland, 781 S.W.2d at 433 (allegation
of general policy to warn of danger did not make State liable for particular
decision to design bridge without lights); Waco v. Hester, 805 S.W.2d
807, 812-13 (Tex. App.BWaco 1990, writ
denied)(claim of negligent implementation of policy was asserted when plaintiff
complained of specific violations of implementation of city jail=s policy
regarding segregation of prisoners).








Appellees made
no such assertions in their petitions. 
Appellees did not allege any negligent implementation of any City
policy, nor did they identify any policy which the City adopted or plead any
facts which would demonstrate the violation of such policy.  In short, appellees never raised a claim of
negligent implementation of policy in their petitions.  See Mogayzel, 66 S.W.3d at
465-66 (petition that did not allege that complained-of lack of guardrails,
warning signs, or other safety devices on highway came about through
negligently implemented policy or plan, but rather only raised a complaint
about the original design of highway without such safety features, did not
raise a claim for which immunity was waived under the negligent implementation
theory of liability); Tex. Dep=t of Transp. v.
Bederka,
36 S.W.3d 266, 272 (Tex. App.BBeaumont 2001,
no pet.)(petition which contained no allegation that governmental unit made
policy decision to perform a discretionary act but failed to implement that
decision did not state a claim under a negligent implementation theory). Having
failed to plead such a claim in their petitions, appellees cannot rely on it
now to establish their claim of jurisdiction. 
It is axiomatic that a trial court cannot have jurisdiction over a claim
that was never pled.  See Hicks v.
Lamar Consol. Indep. Sch. Dist., 943 S.W.2d 540, 543 (Tex. App.BEastland 1997,
no writ)(where plaintiff on appeal asserted exceptions which would permit
jurisdiction, but had failed to allege such exceptions in his petition before
the trial court, jurisdiction did not lie).

Moreover, even
if such a claim had been made, the assertion of a negligent implementation
theory of liability arises only after a plaintiff has properly asserted a
waiver of immunity under section 101.021.  City of Orange v. Jackson, 927 S.W.2d 784,
786 (Tex. App.BBeaumont 1996,
no writ).  Since appellees failed to do
so, the theory of negligent implementation liability does not arise in this
case.  Id.    








Therefore, we
find that even if a claim had been raised which fell within the scope of
section 101.021, sovereign immunity was not waived as to the decisions, acts,
and failures to act complained of in the petitions as the same were
discretionary, and so sovereign immunity was preserved under the provisions of
sections 101.060 and 101.056(a) of the Act. 


CONCLUSION

Having
determined that appellees failed to state a claim which falls within the scope
of liability for which sovereign immunity is waived under the Act, we must now
decide whether such petitions are incurably defective, or whether, under the
facts alleged in the petitions, the pleadings might be amended to allege a
cause of action within the trial court=s
jurisdiction.  

Appellees pled
only a claim of special defect.  As noted
previously, the alleged  dangerous
condition is not a special defect under law. 
Moreover, the claims alleged arise from discretionary functions that
fall within the exceptions provided by sections 101.056 and 101.060 of the Act,
for which sovereign immunity is preserved. 
Under the facts of this case, no amendment could possibly cure such a
defect in the pleadings and, therefore, the claims must be dismissed.  Ramirez, 74 S.W.3d at 867-868.  

We sustain the
City=s issues on
appeal, find that the petitions fail to state a claim against the City that
falls within the waiver of sovereign immunity provided by the Texas Tort Claims
Act, reverse the trial court=s decision
denying the plea to the jurisdiction and render judgment dismissing all claims
against the City for lack of subject matter jurisdiction.

 

ERRLINDA CASTILLO

Justice

Publish.

Tex.
R. App. P.
47.3(b).








Opinion delivered and filed

this 24th day of
October, 2002.











[1]
Retired Justice Melchor Chavez assigned to this Court by the Chief Justice of
the Supreme Court of Texas pursuant to Tex.
Gov=t Code Ann. '74.003
(Vernon 1998). 





[2]  We have jurisdiction over this interlocutory
appeal pursuant to section 51.014(a)(8) of the civil practice and remedies
code, which provides that an appeal may be taken from an interlocutory order
that

grants or
denies a plea to the jurisdiction by a governmental unit as that term is
defined in 

section
101.001 of the same code.  Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(8) (Vernon Supp. 2002).  It is
undisputed that the city of Mission is such a governmental unit.  See Tex.
Civ. Prac. & Rem. Code Ann. '101.001(3)(B)(Vernon Supp.
2002)(a city is a governmental unit under the Texas Tort Claims Act).  The appeal is accelerated pursuant to rule of
appellate procedure 28.1.  See Tex. R. App. P. 28.1.





[3]
The other defendants are not parties to this appeal.





[4]
Tex. Civ. Prac. & Rem. Code Ann. ''101.001-.109
(Vernon 1997 & Supp. 2002).





[5]
We must take all factual allegations pled as true,
unless the defendant pleads and proves that the allegations were fraudulently
made in order to confer jurisdiction.  Cont=l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d
444, 449 (Tex. 1996).  In the present
case, the City asserted falsity in the pleadings but its assertions did not go
to appellees= description of
the facts made the basis of the claims but rather to the characterization of
the nature of the claims averred.  The
City submitted evidence to the trial court on the question of jurisdiction,
which purportedly clarified the true nature of appellees=
claims.  We will review such evidence to
the extent relevant to the jurisdiction as permitted by the decision in
Bland. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000).





[6]
Proprietary functions are not covered by the doctrine of sovereign immunity,
and a municipality may be held liable for claims related to these functions.  City of Round Rock v. Smith, 687 S.W.2d
300, 302 (Tex. 1985); City of Galveston v. Posnainsky, 62 Tex. 118, 127
(1884).





[7]
For an extensive discussion of the relationship between sections 101.0214 and
101.021, see Bellnoa v. City of Austin, 894 S.W.2d 821, 826 (Tex. App.BAustin
1995, no writ); McKinney v. City of Gainseville, 814 S.W.2d 862, 865
(Tex. App.BFort Worth
1991, no writ) and Montford, J.& Barber, W., 1987 Texas Tort Reform: The
Quest for a Fairer and More Predictable Texas Civil Justice System, 25 Hous. L. Rev. 59, 121 (1988).





[8]
Section 101.025 of the Texas Tort Claims Act waives sovereign immunity to suit
to the extent that liability is created Aby
this chapter.@ Tex. Civ. Prac. & Rem. Code Ann. '101.25 (Vernon 1997).
Liability is created under the Act in section 101.021 which delineates the
three areas for which governmental units may be held liable, to wit: (1)
property damages, personal injury and death proximately caused by a government
employee=s wrongful act,
omission or negligent use of a motor-driven vehicle or equipment, Tex. Civ. Prac. & Rem. Code Ann. '101.021(1)(Vernon
1997); (2) personal injury and death caused by the condition or use of tangible
personal property, Tex. Civ. Prac. &
Rem. Code Ann. '101.021(2)(Vernon
1997); and (3)  personal injury and death
caused by the condition or use of real property, Tex. Civ. Prac. &  Rem.
Code Ann. '101.021(2)
(Vernon 1997).  City of Houston v.
Rushing, 7 S.W.3d 909, 914 (Tex. App.BHouston
[1st Dist.] 1999, pet. denied)(en banc). 
As to this last category of liability, the Act further explicates that
there are two types of conditions of real property for which governmental
liability is recognized and to which different duties attach, namely premise
defects and special defects.  Tex. Civ. Prac. & Rem. Code Ann. '101.022
(Vernon 1997).  Thus, although sometimes
sections 101.022 is cited as establishing an area of liability for which
sovereign immunity is waived, e.g. Alvarado v. City of
Brownsville, 865 S.W.2d 148, 155 (Tex. App.BCorpus
Christi 1993), rev=d on other grounds, 897
S.W.2d 750 (Tex. 1995), it is, in fact, only descriptive of the
duties of care owed by the governmental unit for the liability set out in
section 101.021(2) for the condition of real property.  See DeWitt v. Harris County, 904 S.W.2d
650, 653 (Tex. 1995)(discussing the relationship between section 101.021 and
101.022); compare also the introductory language of section
101.021 (AA government
unit in the state is liable for . . . A)
and caption (AGovernmental
Liability@) with the
introductory language (AIf a claim
arises from a premise defect . . .@
and AThe limitation
of duty in this section . . .@)
and caption (ADuty owed:
Premise and Special Defects@)
of section 101.022.  Tex. Civ. Prac. & Rem. Code Ann. ''101.021,
101.022 (Vernon 1997).





[9]
Similarly, section 101.025, while expressly waiving sovereign immunity, does so
only to the extent Aliability is
created by this chapter,@ and hence a
party seeking to establish jurisdiction may not simply plead a general waiver
of sovereign immunity under this section but must state a claim for which
liability is created under section 101.021. 
Tex. Civ. Prac. & Rem. Code
Ann. ''101.021,
101.025 (Vernon 1997); see Tex. Dep=t
of Crim. Justice v. Miller, 51 S.W.3d 583, 587 (Tex.
2001).





[10]
Both the fourth amended original petition and the first amended plea in
intervention cite this section as A101.025,"
but since that section does not contain the subsections listed, we read this as
an attempt to claim the applicability of section 101.0215 which is earlier
cited in the same paragraph of the petition. 





[11]
The petition alleged the claims of Veronica Garza Cantu, Yvonne Cantu, Angelica
Sifuentes, and the estate and survivors of Neria N. Alvarado.





[12]
There is no dispute that the portion of the road in question lies within the
boundary of the City of Mission.





[13]
The petition does not state any facts relating how the City allegedly had
notice of the complained-of condition prior to the accident.  In an earlier paragraph of the petition,
appellees allege that Athe
aforementioned Defendants@ had Aactual
and constructive notice of the dangerous condition during and after the
construction process@ due to their Aconstruction
efforts in widening@ of the
road.  As this section immediately
follows a section in which certain defendants, but not the City, are listed,
and who are specifically complained of as being those responsible for widening
the road, it would appear that the term Athe
aforementioned Defendants@ refers to
those listed defendants and not the City of Mission. The only facts stated
explicitly regarding notice to the City relate to actual notice of the accident
itself as part of an averment that the dictates of section 101.101  of the civil practices and remedies code have
been meet.  See Tex. Civ. Prac. & Rem. Code Ann. '101.101 (Vernon 1997).





[14]
See footnote 10.





[15]
This pleading alleges the claims of the estate and survivors of  Maria G. Aguirre.





[16]
We do not discuss the claim that the City was Agenerally
negligent@ as such a
claim is facially insufficient to raise a claim under the Texas Tort Claims
Act.  Miller, 51
S.W.3d at 587.





[17]
Appellees also appear to attempt to raise a negligence per se claim in regard
to the failure to comply with the MUTCD. 
A violation of the MUTCD is not neligence per se, as compliance with
MUTCD is not mandatory.  See State Dep=t
of Highways & Pub. Transp. v. King, 808 S.W.2d
465, 466 (Tex. 1991)(per curiam)(holding that MUTCD does not establish a
mandatory duty under law).  Moreover,
alleging negligence per se is not itself sufficient to raise a claim under the
Texas Tort Claims Act; the alleged negligence per se must fall within a waiver
of immunity under section 101.021 in order for jurisdiction to be
established.  Mendez v. San
Benito/Cameron County Drainage Dist. No. 3, 45 S.W.3d 746, 755 (Tex. App.BCorpus
Christi 2001, pet. denied).  Hence a
waiver of immunity as to the claimed negligence per se would have to have been
pled.  Id.  Although in the present case no independent
waiver of immunity was pled as to these alleged violations, and hence they cannot
stand as independent claims, we still consider them insofar as they are part of
appellees= complaints as
to the design of the road and lack of warning devices, which claims allege a
waiver of liability for a dangerous condition of the road under section
101.021(2).  Tex. Civ. Prac. & Rem. Code Ann. '101.021(2)(Vernon 1997).





[18]
Despite the use of the term Aconstruction,@
there is no claim that the condition of the road, i.e. the surface, materials,
etc., was defective, that is, did not comport with the original design as
intended by the City; rather the complaints go solely and directly to the
original design of the road, including the lack of certain features.  See Ramos v. Tex. Dep=t
of Pub. Safety, 35 S.W.3d 723, 733 (Tex. App.BHouston
[1st Dist.] 2000, pet. denied)(contrasting construction versus design
complaints) and Siders v. State, 970 S.W.2d 189, 193 (Tex. App.BDallas
1998, pet. denied)(finding that plaintiffs=
negligent construction and maintenance claims failed as a matter of law as they
were simply design claims assigned Anew
labels@).  





[19]
Moreover, we note that aside from not alleging a premise defect, appellees did
not meet the pleading requirements necessary to raise a premise defect claim,
that is, they did not plead that the City acted willfully, wantonly, or with
gross negligence, nor did they plead that the governmental unit had actual
knowledge of the dangerous condition as would be required to raise a claim
under the exception of State v. Tennison.  See State Dep=t
of Highways & Pub. Transp. v. Payne, 838
S.W.2d 235, 237 (Tex. 1992) (op. on reh=g);
State v. Tennison, 509 S.W.2d 560, 562 (Tex. 1974); see also Chapman
v. City of Houston, 839 S.W.2d 95, 100 (Tex. App.BHouston
[14th Dist.] 1992, writ denied)(mere pleading that the State should have warned
or protected plaintiff from a dangerous condition does not raise a premise
defect claim; plaintiff must plead that the State engaged in willful, wanton,
or grossly negligent conduct or that the State had knowledge of a dangerous
condition while plaintiff did not.) 





[20]
In their brief on appeal, appellees assert that Athere
was an eradicated lane marker in this case and the City of Mission which
exercised its discretion initially to build the road has a duty to exercise
reasonable care implementing its decision lest it be subject to suit. Such an
action could be based on premise defect or negligent implementation of policy.@  Without commenting on the sufficiency of such
a statement to raise a claim under either theory, we note that no such claim
against the City was pled in the petitions.





[21]
Appellees invite us to create a theory of Ahybrid
special defect@ to
allow the present case to go forward to trial. 
We decline appellees= invitation.  As an intermediate appellate court, we are
bound to follow the expression of the law as stated by the Texas Supreme Court
and leave changes in the law to that court or the legislature.  Volkswagen of Am., Inc. v. Ramirez, 79
S.W.3d 113, 128 (Tex. App.BCorpus Christi 2002, pet.
filed); Austin v. Healthtrust, Inc., 951 S.W.2d 78, 80 (Tex. App.BCorpus
Christi 1997), aff=d 967
S.W.2d 400 (Tex. 1998).





[22]
This section, entitled ADiscretionary
Powers,@ provides

 

This
chapter does not apply to a claim based on:

 

(1)
The failure of a governmental unit to perform an act that the unit is not
required by law to perform; or

 

(2)
The governmental unit=s decision not
to perform an act or on its failure to make a decision on the performance or
nonperformance of an act if the law leaves the performance or nonperformance of
the act to the discretion of the governmental unit.

 

Tex. Civ. Prac. & Rem. Code Ann. '101.056
(Vernon 1997).

 





[23]
See footnote 20.





[24]
Appellees do not cite any particular policy which they assert was negligently
implemented.





[25]
Section 101.056 protects governmental units from liability for the failure to
perform an act that the unit is not required by law to perform as well as for
the failure to make a decision on the performance or nonperformance of a
discretionary act. Tex. Civ. Prac. &
Rem. Code Ann. '101.056(1),
(2)(Vernon 1997).  





[26]
Indeed both the statute and very definition of discretionary power embrace, vel
non, not only the power to act, but the power to fail to act, the power to
decide, and the power to fail to decide. 
As we have noted, Athe rule of
immunity from tort liability of a city in the exercise of governmental
functions extends to discretionary powers, and generally there is no liability
for damages resulting from either the failure to exercise, the manner of
exercising, or errors in judgment in exercising, such discretionary powers.@
 Sarmiento v. City of Corpus Christi,
465 S.W.2d 813, 816 (Tex. Civ. App.BCorpus
Christi 1971, no writ)(citing City of Waco v. Darnell, 35 S.W.2d 134,
135 (Tex. Comm=n App. 1931,
holding approved)).





[27]
Lights, road signs, and safety features are considered part of a roadway=s
design.  Siders, 970 S.W.2d at
192. 





[28]
Section 101.060, entitled ATraffic
and Road Control Devices,@ reads

 

(a)
This chapter does not apply to a claim arising from:

 

(1)
The failure of a governmental unit initially to place a traffic or road sign,
signal, or warning device if the failure is a result of discretionary action of
the governmental unit;

 

(2)
the absence, condition, or malfunction of a traffic or road sign, signal, or
warning device unless the absence, condition, or malfunction is not corrected
by the responsible governmental unit within a reasonable time after notice; or

 

(3)
the removal or destruction of a traffic or road sign, signal, or warning device
by a third person unless the governmental unit fails to correct the removal or
destruction within a reasonable time after actual notice. 

 

(b)
The signs, signal, and warning devices referred to in this section are those
used in connection with hazards normally connected with the use of the roadway.

 

(c)
This section does not apply to the duty to warn of special defects such as
excavations or roadway obstructions.

 

Tex. Civ. Prac. & Rem. Code Ann. '101.060
(Vernon 1997).

 

The petitions in the instant case do not allege any of the
exceptions of section 101.060, namely those of subsections (a)(2) or (a)(3), and
indeed do not address the applicability of section 101.060 at all.  Tex.
Civ. Prac. & Rem. Code Ann. '101.060(a)(2),
(a)(3) (Vernon 1997).  We are aware that
under subsection (c), the preservation of sovereign immunity under section
101.060 does not apply to a special defect claim.  Tex. Civ. Prac. & Rem.
Code Ann. '101.060(c)
(Vernon 1997).  However, as previously
discussed, no special defect claim was properly stated in the present case. 





[29]
Although appellees argue that on appeal that there was Ano
evidence in the record@ that the
decisions involved were the result of a Aconscious
exercise of discretion,@ they do not
argue that the City had no discretion, that is, that it was mandated by law to
take certain actions.  Appellees do
assert violations of the MUTCD and other unspecified regulations in their
petitions, but they do not assert that these imposed a mandatory duty. Of
course, as previously noted, MUTCD does not impose any mandatory duty.  King, 808 S.W.2d at 466.